
DA 10-0173

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 7N

GUDREN ANDREA SCHROEDER,

     Petitioner and Appellee,

  v.

JOHN ANDREW SCHROEDER,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 06-374
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          P. Mars Scott; P. Mars Scott Law Offices; Missoula, Montana

     For Appellee:

          Gudren Andrea Schroeder (self-represented); Missoula, Montana

Submitted on Briefs:  November 4, 2010
Decided:  January 25, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 John Schroeder appeals from the Findings of Fact, Conclusions of Law, and Decree of Dissolution and the order denying his motion to amend the decree entered by the District Court for the Fourth Judicial District, Missoula County. We affirm in part, reverse in part, and remand.

¶3 John and Gudren Schroeder were married on January 29, 1994, in Lake Tahoe, Placer County, California. Four children were born of the marriage, and all were minors at the time of the decree of dissolution. During the marriage, John earned a substantial income as a medical supplies sales consultant, and Gudren obtained a doctorate in pharmacy, although she did not work as a full-time pharmacist. The parties resided at their marital home in Missoula, which had a mortgage in the amount of $450,000 at the time of dissolution. Gudren filed a petition for legal separation on June 8, 2006, which was followed in July 2006 with a verified counter-petition for dissolution filed by John. Gudren remained at the marital home after the separation, apart from a period of time when the parties attempted to reconcile.

¶4 In January 2007, Gudren filed a motion for interim maintenance and for an advance for payment of attorney fees. The court, after noting that Gudren had recently been laid off from her part-time pharmacy job and John earned an average of $143,694 per year, made findings under the criteria in § 40-4-203, MCA (2005), and concluded that temporary maintenance was appropriate. It ordered John to pay "interim maintenance to Gudren in the amount of $3,000 per

2

month, and to continue to pay the mortgage, taxes and insurance on the family." Due to confusion that resulted from a subsequent order clarifying this order, the District Court issued its Second Order of Clarification in March 2007, which stated that John must pay temporary child support that had been previously ordered, "as well as $3,288.34 in monthly household payments in addition to attorney's fees." The court further stated that "[t]he reference(s) to $3,000 in maintenance are ordered stricken." The court did not make further reference to its initial order approving temporary maintenance to Gudren. The obligations laid out in the Second Order of Clarification remained largely unmodified throughout the proceedings despite motions filed by the parties to either increase or decrease these obligations. John lost his employment during the proceeding and was deemed to earn $75,000 annually for purposes of his future obligations.

¶5 After trial, the District Court issued the final decree on December 29, 2009. The decree included a statement that "John is current on all of the Court ordered household payments. John testified that during these proceedings, he has paid to Gudren, or on her behalf or on behalf of the children over $190,000." The court then stated that, pursuant to previous calculations within the decree, "$104,480 is allocated to child support through July 2009." The court did not allocate the remainder, and despite stating John was current on his household obligations, accepted Gudren's assertion that John was in arrears in temporary family support by approximately $9,819, which had resulted from John having paid a lower amount then ordered for the household obligations after the mortgage payment decreased due to a decrease in the variable interest rate. The District Court also concluded in the final decree that Gudren was not entitled to maintenance under § 40-4-203, MCA.

¶6 Regarding the parties' marital home, the final decree gave each party equal equity and liability for the mortgage and granted Gudren the opportunity to refinance the home in her name.

Without providing a specific timeline for these events to occur, the decree stated that in the event Gudren could not take over the financing that the marital home would be sold, with the proceeds used to, first, satisfy the mortgage, closing costs and fees, then satisfy outstanding child support and family support obligations, and then be divided equally between the parties. The decree directed that John was responsible for half of the remaining fees of Gudren's former attorney, the remaining balance of a loan John took on a retirement account during the proceedings of which Gudren received half for payment of her attorney fees, the entire fees of the parties' settlement master, and half of Gudren's remaining student loans she acquired during the marriage as she obtained her pharmacy degree.

¶7 John filed a motion to amend the decree pursuant to M. R. Civ. P. 59(g) and 60(a), asserting that the court had made several errors. John emphasized the language in the decree that stated he testified to paying over $190,000 during the proceedings and allocated $104,480[1] to temporary child support. He requested that the unallocated amount, $85,540, which he characterized as an overpayment of temporary family support, be considered a partial property distribution to Gudren under § 40-4-121(1), MCA, and that the overall property distribution be adjusted accordingly. He raised other issues in his motion regarding responsibility of certain debts, fees, and arrearages addressed in the decree.

¶8 In March 2010 the District Court issued an order addressing John's contentions. Regarding the statement in the decree about John having testified to paying over $190,000 during the proceedings, the court stated that it "clearly intended any of the alleged overpayment to be considered maintenance paid during the course of the proceedings." The court denied

---

[1] The amount of child support paid was actually found to be $104,460 earlier in the decree, leaving the amount of $85,540 as unallocated, the amount we use herein.

4

John's motion on this issue and on his other contentions, except for correcting certain clerical errors within the decree.

¶9 On appeal, John challenges the District Court's overall distribution of the marital estate as inequitable. Specifically, he challenges the court's failure to allocate his asserted overpayment of $85,540 in temporary payments as a partial property distribution to Gudren. He challenges the District Court's related determination that he was in arrears to Gudren for temporary family support in the amount of $9,819 resulting from the decreased mortgage payment. He further challenges the court's omission of a timeline and mechanism for awarding his share of the equity in the marital home upon Gudren's refinancing or failure thereof, and the court's determination of his responsibility for Gudren's remaining attorney fees and the loan on the retirement account, the parties' settlement master fees, and Gudren's remaining student loan acquired during the marriage and the court's failure to offset his obligation on the student loan by gifted and premarital contributions.

¶10 We review the district court's underlying factual findings in a division of marital property to determine if those findings are clearly erroneous. *In re Marriage of Killpack*, 2004 MT 55, ¶ 8, 320 Mont. 186, 87 P.3d 393 (citation omitted). Absent erroneous findings or an abuse of discretion, we will affirm the court's distribution of property. *Killpack*, ¶ 8 (citation omitted).

¶11 As a preliminary matter, we express our concern about the statement in the decree that "John testified that during these proceedings, he has paid to Gudren, or on her behalf or on behalf of the children over $190,000." First, a statement that a witness merely testified to something is not, technically, a "finding" to that effect until the court accepts that evidence. *In re Marriage of Wilmot*, 199 Mont. 477, 479, 649 P.2d 1295, 1296 (1982). Secondly, our review of the trial transcript fails to reveal the basis for that statement, and John does not direct our

5

attention to portions of the record to support it. John testified to paying certain lesser amounts, but we are not able to discern from his testimony how the $190,000 was calculated. Gudren was asked while testifying if John had paid her approximately $190,000, but she disclaimed knowledge of that amount. Third, if John has overpaid his obligations, it appears inherently inconsistent to simultaneously hold that he is in arrears by $9,819 for household support obligations, as the decree currently provides. Because this is a central issue in the dispute, we believe a proper finding supported by substantial evidence is necessary before this matter can be resolved.

¶12 Further, the District Court's post-decree order allocated amounts in excess of child support to temporary maintenance, presumably pursuant to the authority provided by § 40-4-121(1), MCA, to do so retroactively. However, it did not enter findings under § 40-4-203, MCA, to justify an award of temporary maintenance, or explain how such an award would comport with its prior order striking the temporary maintenance award. *See* § 40-4-121(8), MCA.

¶13 Upon remand, the District Court is to address these issues in clarification of the decree. The District Court retains the discretion to do so based upon on the record developed at trial or through any additional submissions or proceedings it deems necessary.

¶14 Regarding the other issues raised by John, the court's determinations that John should be held responsible for a portion of Gudren's remaining attorney fees and the remaining balance of the loan on the retirement account, the parties' entire settlement master fees, and half of Gudren's remaining student loans are supported by the evidence and were not an abuse of the court's discretion. We concur with John's contention that the court's decree does not provide sufficient direction for implementation of the distribution of the parties' equity in the marital home, and this issue should be further addressed on remand. With the clarification of the decree

6

as ordered herein, the distribution of the marital estate may, in the court's discretion, need to be revised in accordance with § 40-4-202, MCA.

¶15    Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS